IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DONALD CALHOUN<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>JACK DOHENY COMPANIES, INC.<br><br>Defendant/Counter-Plaintiff. | CA No.: 4:19-CV-03171<br><br>JURY DEMANDED |

**PLAINTIFF/COUNTER-DEFENDANT CALHOUN'S RESPONSE TO COUNTER-PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff/Counter-Defendant, DONALD CALHOUN ("Calhoun") files this response to Defendant/Counter-Plaintiff, JACK DOHENY COMPANIES, INC.'S ("JDC") Motion for Preliminary Injunction.

### 1. STATEMENT OF THE NATURE AND STATE OF PROCEEDINGS

On July 29, 2019, Calhoun filed his Original Petition for Declaratory Judgment seeking a declaration from state court that the non-competition, non-solicitation and confidentiality provisions of an employment agreement JDC seeks to enforce against Calhoun are unenforceable. On August 23, 2019 JDC removed this case to this Court based on diversity jurisdiction. JDC filed a counterclaim on August 30, 2019 and on September 9, 2019 filed a motion for preliminary injunction. On September 11, 2019, this Court entered an Order for an expedited response to Counter-Plaintiff's motion to be due by September 13, 2019 at 5:00 p.m. Calhoun timely files this Response to JDC's motion.

1

## 2.  STATEMENT OF ISSUE

Whether JDC is entitled to a preliminary injunction enforcing certain provisions of an employment contract with Calhoun.

## 3.  SUMMARY OF THE ARGUMENT

JDC is not entitled to injunctive relief because there is no substantial threat of irreparable injury from Calhoun. Moreover, the provisions of the employment agreement that JDC seeks to enforce are overbroad. The non-competition agreement as written would prevent Calhoun from working in his profession in all of North America. JDC, a multi-national company, seeks to put Calhoun, an individual who works predominantly in the state of Texas, out of work by enjoining him from being employed at his current place of work -- and at any other company providing similar services to JDC within an entire continent. The restrictions that are being placed on him with regard to post employment with the company impose a greater restraint than is reasonably necessary to protect JDC's legitimate goodwill expectations.

## 4.  FACTUAL BACKGROUND

Calhoun worked at JDC from 2010 until he resigned on May 31, 2019. Calhoun began his career with JDC to help manage the company's Texas sales and rental business with a starting salary of $45,000.00. In 2011, JDC promoted Calhoun to General Manager where he earned a salary of $90,000.00. In 2015, JDC recognized Calhoun's leadership and promoted him to Southern Regional Manager where he earned a salary of $185,000.000. Not mentioned in JDC's motion, was that in February 2019, JDC demoted

Calhoun from a regional manager to a sales representative and reduced his salary to $65,000.00.[1] Based on the sudden and significant decrease in salary, Calhoun was forced to resign and seek employment elsewhere.[2]

Calhoun subsequently accepted a position with Custom Truck One Source ("Custom Truck"). Since Calhoun started employment with Custom Truck, he has not provided services under contract to any of JDC's customers, not even ROC Service Company ("ROC"),[3] the company JDC speculates is in business relationship with Custom Truck because of Calhoun.[4] While Custom Truck does provide some similar products and services as JDC, it is not a direct competitor with JDC on many of the different products and services offered.[5]

## 5. ARGUMENT & AUTHORITIES

The Fifth Circuit has approved the following framework for determining whether to grant a preliminary injunction:

> The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits. To be entitled to a preliminary injunction, the movant must satisfy each of the following equitable factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) granting the injunctive relief will not disserve the public interest. Because a preliminary injunction is an extraordinary remedy, it should not be granted unless the movant has clearly carried the burden of persuasion on all four requirements.

---

[1] Ex. A, Calhoun Compensation Plans
[2] Ex. B, Affidavit of Donald Calhoun
[3] Ex. B, Affidavit of Donald Calhoun
[4] JDC's Ex. 2, Affidavit of Steven Shafer ¶16
[5] Ex. B, Affidavit of Donald Calhoun

Failure to sufficiently establish any one of the four factors requires this Court to deny the movant's request for a preliminary injunction.[6]

Here, JDC has not met the four requirements to entitle it to such an extraordinary remedy.

### a. JDC does not have a substantial likelihood of success on the merits.

JDC's breach of contract claim fails because the non-competition clause of the employment contract is overbroad and unreasonable, thus making that provision of the contract unenforceable. Under Texas law, a noncompetition covenant is enforceable:

> If it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com. Code § 15.50. The noncompetition provision states that "Employee shall not perform, in **North America**, service for, become engaged by, or aid, assist, own, operate, or have any financial interest in a company that is in the Business[7] at any time during or within (2) years after termination."

Texas courts have found that noncompetition covenants that cover areas where the employee did not actually work or clients whom the employee did not actually serve during his employment are overbroad and unenforceable. *See, e.g., Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 298 (Tex.App.—Beaumont 2004, no pet.) ("[A] covenant not to

---

[6] *SandBox Logistics LLC v. Proppant Express Investments LLC*, No. 4:17-CV-589, 2017 WL 7036797, at *2 (S.D. Tex. Aug. 14, 2017) (citing *City of Dallas v. Delta Air Lines, Inc.,* 847 F.3d 279, 285 (5th Cir. 2017) (quoting *City of Dallas v. Delta Airlines, Inc.,* Civil Action No. 3:15-CV-2069-K, 2016 WL 98604, at *6 (N.D. Tex. Jan. 8, 2016) (vacated in part on other grounds)).
[7] "Business" is defined as the selling, servicing and renting various industrial utility vehicles, including, but not limited to, street sweepers, petroleum, waste hauling, hydro-excavating, sewer trucks and other specialty commercial vehicles and all related parts and services. JDC's Exhibit 2, Employment Contract, first recital.

4

compete that extends to clients with whom a salesman had no dealings during his employment is unenforceable.") (citing *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied)); *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793–94 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("A covenant not to compete with a broad geographical scope is unenforceable, particularly when no evidence establishes the employee actually worked in all areas covered by the covenant.") (citing *Evan's World Travel, Inc. v. Adams*, 978 S.W.2d 225, 232–33 (Tex.App.—Texarkana 1998, no pet.); *Evan's*, 978 S.W.2d at 233) (finding that a noncompetition covenant that restricted the employee from working in "any State in which [the employer] ... has conducted its business' " during the employee's term of employment was "greater than necessary to protect [the employer's] legitimate business interest"); *accord Curtis v. Ziff Energy Group, Ltd.*, 12 S.W.3d 114, 119 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

Additionally, the Fifth Circuit in *D'Onofrio v. Vacation Publications, Inc.* has held that covenants that amount to an industry-wide restriction amount to an unreasonable restraint on trade and therefore unenforceable.[8] Here, Calhoun is restricted from selling, servicing and renting various industrial utility vehicles, including, but not limited to, street sweepers, petroleum, waste hauling, hydro-excavating, sewer trucks and other specialty commercial vehicles and all related parts and services, in North America. Like, *D'Onofrio*,

---

[8] *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 212 (5th Cir. 2018).

JDC seeks to restrain Calhoun from working in the entire industrial utility vehicle industry, in a geographic region that is overbroad.

Like the long line of Texas cases and the Fifth Circuit have held, JDC's noncompetition provision is broader in geographical scope than is necessary to protect the legitimate business interests of the company and is unreasonable. Thus, the noncompetition agreement is unenforceable, and JDC will not have likelihood of success on the merits. The Court should bear in mind that JDC is asking it to enter an injunction based on the non-competition agreement as presented, and is not asking for reformation.

**b. There is no substantial threat of irreparable injury to JDC from Calhoun.**

JDC's allegations of injury are merely speculative. A preliminary injunction is an "extraordinary equitable remedy" that "requires that the plaintiff demonstrate that, without injunctive relief, [it] will suffer an irreparable injury for which damages are an inadequate remedy."[9] Further, the injury must be actual and imminent.[10] The injury cannot be speculative.[11] Here, JDC's motion states Calhoun imminently threatens the loss of JDC's customers and irreparable damage to JDC's goodwill with its customers, including ROC. This allegation is only supported by the speculation in Steven Shafer's Affidavit. Shafer states, "Calhoun *can* unfairly leverage those customer relationships on behalf of any company competing for Industrial Utility Vehicle Services, regardless of whether Calhoun is strictly serving as a salesperson or sales manager. . . For example, if Calhoun became a

---

[9] *Jones v. Am. Council on Exercise*, Civil Action H-15-3270, 2017 WL 1164306, at *10 (S.D. Tex. Mar. 29, 2017) (quoting *Brennan's, Inc. v. Brennan*, 289 Fed.Appx. 706, 707 (5th Cir. 2008)).
[10] *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975), cert. denied, 432 U.S. 930 (1975).
[11] *Watson v. Fed. Emergency Mgmt. Agency*, 437 F. Supp. 2d 638, 648 (S.D. Tex. 2006), vacated, 2006 WL 3420613 (5th Cir. 2006).

repair manager, rather than a sales manager, providing Industrial Utility Vehicle Services, Calhoun *could still* leverage the relationships he created through JDC to unfairly compete with JDC for the provision of Industrial Utility Vehicle Services."[12] The allegations of harm against JDC are not substantiated with evidence, but rather by conjectures.

Shafer's affidavit is devoid of any statement showing how the irreparable harm he is alleging would occur. His statements do, however, show how unreasonable and far reaching JDC is willing to go, based on his statement, not only can Calhoun not work as a salesperson or a sales manager, but Calhoun would have to change his profession entirely to satisfy JDC's overbroad and excessive noncompetition agreement.

Additionally, any allegation that Calhoun's LinkedIn announcements have or can harm JDC, is unsupported by any evidence that JDC has or will actually lose any customers to Calhoun. The 38 pages of printed LinkedIn screenshots JDC has provided in its Exhibit 11 does not show how Calhoun can, has, or will cause irreparable harm to JDC. Calhoun has merely exercised his First Amendment right to post on social media the change in his employment status.[13]

As for the allegations of Calhoun soliciting ROC, JDC has provided a Master Agreement between ROC and Custom Truck as purported proof that Calhoun solicited ROC without providing any context. ROC has had an account with Custom Truck since 2011, prior to Calhoun's employment with Custom Truck and Custom Truck has not provided any services or rentals to ROC per that agreement.[14] This is not an example of a

---

[12] JDC's Ex. 2, Affidavit of Steven Shafer ¶¶13,14. (Emphasis added).
[13] Ex. B, Affidavit of Donald Calhoun.
[14] Ex. B, Affidavit of Donald Calhoun.

specific loss to JDC, thus, there is no imminent threat of irreparable harm to JDC from Calhoun.

### c. There is no threatened injury to JDC but the injunction would greatly harm Calhoun by taking away his current means for employment.

JDC asserts that a preliminary injunction would not prevent Calhoun from seeking a wide array of other employment opportunities, with the caveat that "he is not providing Industrial Utility Vehicle Services."[15] However, the proposed injunction would require Calhoun to leave his job and the profession he has known for nearly a decade to enforce a noncompetition agreement that is industry-wide and overbroad in geographic scope. The harm the preliminary injunction would cause to Calhoun greatly outweighs any potential harm to a self-proclaimed "multi-national" company like JDC.

### d. Granting the injunctive relief will disserve the public interest of not enforcing overbroad and overreaching noncompetition agreements that prevent individuals like Mr. Calhoun from his right to earn a livelihood in his profession of choice.

JDC asserts that it is in the public interest to promote fair competition, rather than permit market participants to create a chilling effect by allowing them to misappropriate, and benefit from, customer lists—without payment or other consideration. Calhoun maintains that he did not misappropriate or benefit from any customer list. More importantly, the preliminary injunction sought in this case would disserve the public interest in not enforcing noncompetition agreements that would prevent an individual from earning a livelihood

---

[15] JDC's Motion for Preliminary Injunction p. 21.

## 6. CONCLUSION

Calhoun need only show JDC's failure to sufficiently establish any one of the four factors required for a preliminary injunction for this Court to deny the movant's request for a preliminary injunction.[16] Calhoun has shown that JDC has not met all of the elements required for the extraordinary remedy of a preliminary injunction. It is for these reasons Counter-Defendant Calhoun asks this Court to deny Counter-Plaintiff JDC's motion.

Respectfully Submitted,

*/s/ Gregg M. Rosenberg*
Gregg M. Rosenberg
USDC SD/TX No. 7325
Texas State Bar ID 17268750
Renee Nguyen
USDC SD/TX No. 3146392
Texas State Bar ID 24096093
ROSENBERG & SPROVACH
3518 Travis, Suite 200
Houston, Texas 77002
(713) 960-8300
(713) 621-6670 (Facsimile)
Attorney-in-Charge for Plaintiff
ATTORNEYS FOR PLAINTIFF

---

[16] *SandBox Logistics LLC v. Proppant Express Investments LLC*, No. 4:17-CV-589, 2017 WL 7036797, at *2 (S.D. Tex. Aug. 14, 2017) (citing *City of Dallas v. Delta Air Lines, Inc.,* 847 F.3d 279, 285 (5th Cir. 2017) (quoting *City of Dallas v. Delta Airlines, Inc.,* Civil Action No. 3:15-CV-2069-K, 2016 WL 98604, at *6 (N.D. Tex. Jan. 8, 2016) (vacated in part on other grounds)).

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2019, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, Houston Division, using the electronic case filing system of the court. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Gregg M. Rosenberg*
Gregg M. Rosenberg